# CIRCUIT COURT OF THE CITY OF NORFOLK

Theresa C. Milstead

v.

Ronald D. Bradshaw et al.

## Case Nos. C95-1576 and C96-1498

BY JUDGE JOHN C. MORRISON, JR.

### October 3, 1997

On March 22, 1996, this court took under advisement the issues raised in defendants' demurrer to Milstead's amended bill of complaint which set forth a personal cause of action. This court now sustains the demurrer and dismisses Milstead's personal action (C95-1576). It is the court's determination that a shareholder's derivative suit is the appropriate proceeding to institute against defendants.

Most recently, the parties appeared before this court on defendants' motion for summary judgment. This court has considered counsel's arguments, supporting briefs, and cited authorities concerning derivative suits. For the reasons stated in this opinion, this court denies defendants' motion and grants plaintiff standing to bring a derivative suit. This court further concludes that Milstead is not barred by res judicata from trying this derivative suit (C96-1498).

Rule 2:21 of the Supreme Court of Virginia extends the remedy of summary judgment to equity. A court must enter judgment in favor of a moving party if it appears from the pleadings, orders, and admissions that the party is entitled to judgment. Rule 2:21. "[S]ummary Judgment is a drastic

remedy which is available only where there are no material facts genuinely in dispute." *Slone v. General Motors Corp.*, 249 Va. 520, 522 (1995) (citing *Turner v. Lotts*, 244 Va. 554, 556 (1992)). It applies only to cases in which no trial is necessary because no evidence could affect the result. In considering a motion for summary judgment, a trial court must adopt those inferences from the facts alleged that are most favorable to the nonmoving party unless those inferences are forced, strained, or contrary to reason. *See GSHH-Richmond, Inc. v. Imperial Associates*, 253 Va. 98, 102 (1997) (citations omitted).

In making its decision, this court considered (1) whether a final divorce decree can be considered a "nominee certificate" for purposes of Virginia Code § 13.1-603; (2) whether Milstead is a "shareholder" under Virginia Code § 13.1-603; (3) whether Milstead possesses sufficient equitable interest to sustain a derivative suit; and finally, (4) whether the applicable statute of limitations had expired prior to the filing of this suit.

A derivative suit is an equitable device created by statute to protect shareholders against abuses by the corporation, its directors, officers, and controlling shareholders. *See Fletcher Cyclopedia of Corporations* § 5941.10 (1996). The nature of the derivative suit is two-fold. First, the suit is the equivalent of a suit by a shareholder to compel the corporation to sue upon a right of action. *See id.* Second, it is also a suit by the corporation, asserted by the shareholder on its behalf, against those liable to the corporation. *See id.*

Virginia Code § 13.1-603 sets forth the definition of "shareholder" as follows:

> [T]he person in whose name shares are registered in the records of the corporation, the beneficial owner of shares to the extent of the rights granted by a nominee certificate on file with a corporation, or the beneficial owner of shares held in a voting trust.

Generally, a shareholder has no right to sue in her own name upon a cause of action existing in the corporation. However, where the corporation actually or virtually refuses to institute or prosecute the suit, a shareholder may bring forth a derivative suit. The shareholder must allege and prove that a request or demand has been made upon the corporation that it institute proceedings on its own behalf against the wrongdoers and that the corporation refused to do so within a statutory period not to exceed ninety days. *See* Va. Code § 13.1-672.1(B). Demand is excused only upon allegation and proof of such facts as show that it is reasonably certain that a demand for corporation action would have been useless. *See Reilly Mtg. Group, Inc. v. Mount Vernon Sav. & Loan Ass'n*, 568 F. Supp. 1067 (E.D. Va. 1983).

Virginia Code § 13.1-672.1 addresses the issue of standing to commence a derivative suit:

> A shareholder may not commence or maintain a derivative proceeding unless the shareholder: (1) Was a shareholder of the corporation at the time of the act or omission complained of; (2) Became a shareholder through transfer by operation of law from one who was a shareholder at that time; (3) Became a shareholder before public disclosure and without knowledge of the act or omission complained of; and (4) Fairly and adequately represents the interests of the corporation in enforcing the right of the corporation.

Clearly, Virginia law requires contemporaneous stock ownership to have standing to bring a derivative suit. The law is consistent with the general rule that one has standing to sue when he or she has sufficient interest at stake in the controversy which will be affected by the outcome of the litigation. In a derivative action where the corporation is the real party in interest, the law seeks to ensure that the plaintiff affords proper representation on behalf of the corporation's interests. This is accomplished by requiring a plaintiff in a derivative suit to be a "shareholder," i.e. one who has a legitimate interest in the corporation in order to adequately represent the corporation's interest in the suit.

Other jurisdictions[1] recognize that record ownership of shares is not necessary to bring a derivative suit and, therefore, holders of equitable or beneficial interests in shares have standing to sue. *See Shilling v. Erwin*, 881 F. Supp. 236 (S.D. W. Va. 1995); *Edgeworth v. First Nat'l Bank of Chicago*, 677 F. Supp. 982 (S.D. Ind. 1988); *Provence v. Palm Beach Taverns*, 676 So. 2d 1022 (Fla. App. 1996); *Jones v. Taylor*, 348 A.2d 188 (Del. Ch. 1975). A recent Florida court articulated the reasoning behind this departure from the stock ownership requirement:

> In recognition of the equitable nature of derivative actions, courts interpreting derivative actions statutes ... have liberally construed such provisions to grant standing in a variety of factual settings without requiring "record" ownership. The consistent rationale of these

---

[1]  California, Colorado, Delaware, Georgia, Indiana, Michigan, Minnesota, Missouri, New York, Ohio, South Carolina, Washington, West Virginia, and Wisconsin recognize that holders of equitable or beneficial interests in shares have standing to bring a derivative suit against a corporation. *See Fletcher Cyclopedia of Corporations* § 5976 (1996).

decisions is that the policies supporting the contemporaneous ownership rule are not advanced by denying standing to a proven owner of an equitable interest in shares.

*Provence*, at 1022 (quoting *South End Improvement Group, Inc. v. Mulliken*, 602 So. 2d 1327, 1330 (Fla. App. 1992)). Thus, persons with a clear beneficial or equitable interest in a corporation may bring a derivative suit without being shareholders of record.

Milstead seeks to qualify as a shareholder by arguing that her final divorce decree is a "nominee certificate."

The issuance of nominee certificates is a common practice between corporations and investment brokerage firms. To have any effect, a nominee certificate must be directly issued by a corporation. The nominee certificate must also be on file with a corporation. *See* Va. Code § 13.1-603.

A final divorce decree cannot be considered a "nominee certificate" because it is not directly issued by a corporation. Generally, a corporation issues nominee certificates pursuant to a procedure established to recognize shares held by nominees. Virginia Code § 13.1-664 sets forth the following discussion regarding shares held by nominees:

A. A corporation *may* establish a procedure by which the beneficial owner of shares that are registered in the name of a nominee is recognized by the corporation as the shareholder. The extent of this recognition may be determined in the procedure ... .

(Emphasis added.) Without establishing a procedure by which nominees may hold a corporation's shares of stock, a corporation cannot issue a nominee certificate. In the instant case, it is clear that the Bylaws of Currents General, Inc., do not provide for this statutory procedure and therefore, has not elected to permit the issuance of nominee certificates.

For these reasons, this court concludes that Milstead does not qualify as a "shareholder" using this theory under Virginia law because she is not a "beneficial owner of shares to the extent of the rights granted by a nominee certificate on file with [the] corporation."

The final divorce decree did however, transfer an equitable ownership interest in the shares in question. On June 25, 1993, Milstead and her ex-husband executed their final separation agreement which designated a transfer of 100 shares of Currents General stock to Milstead. The final divorce decree, entered on October 6, 1993, by the Virginia Beach Circuit Court incorporated the separation agreement. It is Milstead's position that the final separation

agreement created a contractual expectancy in the 100 shares of stock and that such constitutes an equitable ownership interest in those shares. *See J. G. Wilson Corp. v. Cahill*, 152 Va. 108 (1929) ("[T]he fact that a transfer of shares is not made in the manner prescribed by the charter, general law, or by-laws of the corporation does not necessarily render it void as between the parties. Ordinarily a transfer which is not made in the prescribed mode, but which would be sufficient at common law, will convey at least an equitable title to the purchaser, and he will be protected therein by a court of equity."). The court accepts Milstead's argument that, at the very least, the final divorce decree transferred an equitable ownership interest to Milstead.

Many jurisdictions outside of Virginia recognize that holders of equitable or beneficial interests in shares have standing to commence a derivative suit. In order to align itself with the other jurisdictions which recognize that actual record ownership of shares is not necessary to bring a derivative action, this court construes Virginia Code § 13.1-603 as allowing Milstead to proceed.

In *Provence v. Palm Beach Taverns, Inc.*, the court held that status as a beneficiary of a constructive trust over 50% of shares satisfied the Florida's contemporaneous ownership requirements for standing to bring a derivative suit. 676 So. 2d 1022 (Fla. App. 1996). The "contemporaneous stock ownership rule" in relation to derivative suits reads as follows:

> (1) A person may not commence a proceeding in the right of a domestic or foreign corporation unless the person was a shareholder of the corporation when the transaction complained of occurred or unless the person became a shareholder through transfer by operation of law from one who was a shareholder at that time … .
>
> (7) For purposes of this section, "shareholder" includes a beneficial owner of shares whose shares are held in a voting trust or held by a nominee on his behalf.

Fla. Stat. § 607.07401(1), (7) (1993). A comparison of these statutory provisions with Virginia Code §§ 13.1-603 and 13.1-672.1 reveals substantial similarities between Virginia and Florida's statutory standing requirements for derivative suits. Clearly, the *Provence* case lends sufficient support for this court to grant Milstead standing.

West Virginia courts also recognize that "[p]ersons with a clear beneficial interest in a corporation may bring a derivative suit without being shareholders of record." *Shilling v. Erwin*, 888 F. Supp. 236 (S.D. W. Va. 1995) *quoting Felsenheld v. Glock Brothers Tobacco Co.*, 119 W. Va. 167, 192 S.E. 545 (1937) (permitting beneficiaries of trust to sue where the trust

corpus consisted of shares). Further, persons with equitable ownership interest in stock may bring a derivative action against the corporation. *See Shilling*, at 239. West Virginia Code § 31-1-103, which governs shareholder derivative actions, states in part:

> No action shall be brought in this State by a shareholder in the right of a domestic or foreign corporation unless the plaintiff was a holder of record of shares or of voting trust certificates therefor at the time of the transaction of which he complains, or his shares or voting trust certificates thereafter devolved upon him by operation of law from a person who was a holder of record at such time.

In *Shilling v. Erwin*, the son of a deceased controlling shareholder brought a derivative action against the corporation and its directors for unlawful suppression of dividends. Defendants moved for summary judgment, and the court, after considerable analysis, granted defendants' motion. Applying West Virginia law, the court concluded that the son lacked standing to maintain a derivative action because he did not have an equitable or beneficial interest in the stock, even though the son would inherit the stock if he were to prevail on another cause of action to declare invalid a codicil giving a controlling interest in the corporation to another individual. *See id*. In other words, "a person who has an interest in an estate as a statutory distributee is *not* an equitable owner entitled to maintain a derivative action." *See id*. at 239 (emphasis added) (citations omitted).

The *Shilling* case provides this court additional support and reason to find that Milstead, as an equitable owner of Currents General stock, has standing to bring a derivative suit even though she does not qualify as a "shareholder" under the Virginia Code. Unlike the plaintiff in *Shilling*, Milstead is not a statutory distributee, but rather, the holder of a contractual expectancy in certain shares of stock validated by a final divorce decree. According to the defendants in the instant case, it is necessary for Milstead to establish her rights against her transferor ex-husband. However, as the *Shilling* case has articulated, it does not matter whether Milstead would prevail on a separate cause of action against her ex-husband to direct a proper transfer of shares. The outcome of such action does not affect this court's ability to grant her standing on the basis of her equitable interest.

Even the state of Delaware permits equitable owners of stock to sue derivatively in instances where a trust relationship is involved. *See Jones v. Taylor*, 348 A.2d 188 (Del. Ch. 1975) ("It has been generally held under Delaware law that for purposes of a derivative action, the term "stockholder"

434

employed in Section 327 includes an equitable owner."). The pertinent statute pertaining to derivative suits is found Delaware Code § 327 and provides that:

In any derivative suit instituted by a stockholder of a corporation, it shall be averred in the complaint that the plaintiff was a stockholder of the corporation at the time of the transaction of which he complains or that his stock thereafter devolved on him by operation of law.

In *Jones*, plaintiff brought a derivative action charging improper conversion of corporate assets by certain corporate officers during the year 1972. Plaintiff based her standing to sue derivatively on the fact that she was the equitable owner of the shares under a written contract with her mother to make a will. She and her brother had agreed with their mother to convey their mother all of their right, title, and interest in 700 shares of Taylor Auto stock in return for their mother's agreement to execute a will bequeathing the stock to them in equal shares upon her death. *See id.* at 190. The court recognized that plaintiff possessed a sufficient equitable interest in stock so as to permit her to maintain the stockholder derivative suit and denied defendants' motion for summary judgment. *See id.* at 191.

In reaching its conclusion, the *Jones* court considered the policy behind Delaware Code § 327 and articulated the following.

The purpose of the rule requiring the plaintiff to be a shareholder at the time of the transaction of which [she] complains is to prevent what is considered to be a wrong, namely, the purchasing of shares in order to maintain a derivative action so as to attack a transaction which occurred prior to the purchase of stock.

*See id.* Without such a rule, subsequent purchasers of shares could reap a windfall from any recovery in a derivative suit which was not considered in the purchase price of their shares. *See Fletcher Cyclopedia Corporations* § 5981.81 (1996). The *Jones* court took the position that where this primary purpose will not be frustrated, the shareholder standing requirements should be liberally construed. *See id.*

By denying an equitable owner of shares the opportunity to enforce a corporate right because she fails to satisfy the ownership requirements as a "shareholder," a court does not advance the policy articulated in *Jones*. It might also lead to an inequitable result since there may be no other shareholders willing to bring a derivative suit. *See Jones*, at 192. For these

reasons, many jurisdictions grant standing to sue derivatively to proven owners of an equitable or beneficial interest in shares.

Like the plaintiff in *Jones*, Milstead possesses a contractual expectancy in shares, the contractual expectancy having been created by the separation agreement between Milstead and her ex-husband. Milstead did not purchase shares of Currents General in order to establish standing and, therefore, does not frustrate the purpose Virginia Code § 13.1-671.1. Further, it does not appear that any of the other shareholders of Currents General would be willing to institute a derivative suit against the corporation. It is unlikely that the individual defendants, Ronald D. Bradshaw and Alfred T. Bradshaw, who are the only shareholders, would bring a derivative suit against themselves.

The plaintiff in *Jones* relied upon an earlier unpublished case called *Pennington v. Neukomm*, No. 4172, 1973 (Del. Ch., Oct. 3, 1973) *aff'd* No. 26, 1974 (Del. Super., Jan. 3, 1975). The situation which creates the contractual expectancy in Milstead's case is similar to that in *Pennington* where the plaintiff claimed standing to sue derivatively under a separation and property settlement agreement entered into upon divorce. In its decision, the Delaware Superior Court confirmed plaintiff's standing based upon her equitable interest in shares and stated the following:

> [The plaintiff] has already purchased the stock by entering into the separation and property settlement agreement with [her ex-husband]. In return for the consideration given by her under this agreement, one of the considerations she received in return was one half of [ex-husband's] stock ... .

*Jones*, at 192. The *Jones* court endorsed this position in reaching its decision. This court finds great persuasive authority in these Delaware cases and endorses both the *Jones* and *Pennington* decisions.

Many federal courts recognize that holders of equitable or beneficial interests in shares have standing to bring a derivative suit. For example, in *Edgeworth v. First Nat'l Bank of Chicago*, the court held that a beneficiary of one half of the income of a trust which owned 80% of a closely held corporation was entitled to bring a derivative action as a shareholder. 677 F. Supp. 982 (S.D. Ind. 1988). Although the court applied Federal Rule 23.1, it stated in a footnote, "[i]n any event, this court finds no authority to suggest that reliance on federal rather than state law would yield a different result." *Id.* at 992, n. 5. While the court granted plaintiff standing as a "shareholder" for purposes of commencing a derivative suit, it qualified its holding to the particular facts of the *Edgeworth* case and refused to articulate a blanket rule

which would consider all trust beneficiaries as shareholders. Because the trust owned such a significant percentage (i.e. 40%) of the corporation, the court determined that the "equities embodied in Rule 23.1 are best served by allowing the [plaintiff] to proceed as a shareholder." *Id.* at 993. Under this line of reasoning, Milstead's equitable interest in one hundred shares (i.e. 33%) of Currents General is sufficient to allow her to proceed as a shareholder.

The appropriate statute of limitations is five years. Equity follows the law with respect to the statute of limitations. *See Belcher v. Kirkwood*, 238 Va. 430 (1989). Thus, where one asserts a legal demand in equity which at law is barred by statute, it will be equally barred in a court of equity. *See id.* at 433.

While a derivative action is in equity, this court must consider whether the cause of action upon which Milstead seeks to sue would be barred by a legal period of limitations had the action been brought by the corporation. "Thus, if the corporation were seeking relief by way of rescission or an accounting, for example, then [laches] would be applicable. On the other hand, if the corporation were suing for *negligence of the directors or waste*, the applicable legal period of limitations would be applicable." *Corporate Litigation*, § 357 (emphasis added). Milstead alleges in her Bill of Complaint that the individual defendants "with gross negligence, carelessness, and intent ... wasted and diverted [assets] to defendant Currents Construction, Inc." This cause of action is, therefore, subject to a statutory period of limitations.

Virginia does not have a specific statute of limitations applicable to a shareholders' derivative suit. Therefore, this court must apply the most nearly applicable period of limitations of the forum. Both parties have argued in depth their reasons for applying certain statutes of limitations to the instant case. Milstead identifies the five-year statute of limitations for injury to property. *See* Va. Code § 8.01-243(B). Defendants argue that the appropriate statute of limitations is governed by Virginia's "catch-all" provision which sets forth either a one or two-year statute of limitations depending on when the cause of action accrued. In light of the allegations made against the defendants for wrongs affecting Milstead's property and property rights, this court concludes that the appropriate period of limitations for commencing a derivative suit is five years. *See Winston v. Gordon*, 115 Va. 899 (1914) (holding that the cause of action against the directors of a bank for neglect of duty as such directors grows out of their breach of duty, and thus, the applicable statute of limitations is five years); *see also Anderson v. Bundy*, 161 Va. 1 (1933) (holding that in a suit against bank directors for negligence in administration of the affairs of the bank, the five-year statute of limitation applies). Thus, Milstead's suit is not time barred.

*Equity considers as done that which ought to be done.* In other words, equity will decree that as done which by agreement is agreed to be done and is proper to fully effectuate the intentions of the parties concerned. *See Pleasants v. Pleasants,* 221 Va. 1017 (1981). This principle gives further support to grant Milstead standing to sue. By executing the final separation agreement, Milstead and her ex-husband agreed that she would receive his shares of Currents General stock. Had there been an appropriate transfer of shares on Currents General's corporate books, then Milstead would qualify as a "shareholder." If this court considers as done that which by agreement is to be done, then Milstead should have standing to sue.

In conclusion, this court finds that Virginia Code §§ 13.1-603 and 13.1-672.1 allow for the plaintiff to commence a derivative suit against the defendants. This court finds that Milstead has standing on the basis of her equitable ownership interest in shares of stock and qualifies standing to the particular facts of this case.

November 13, 1997

On October 3, 1997, the Court issued a letter opinion concluding: (1) Milstead, as an equitable owner of stock, has standing to bring a derivative suit against Defendants and (2) the five year statute of limitations for injury to property applies to Milstead's derivative suit. The Court stands by its ruling and denies Defendants' Motion for Reconsideration of the statute of limitations issue. Accordingly, I am this day entering Orders dismissing Milstead's personal action against Defendants and denying Defendants' Motion for Summary Judgment.

A derivative suit is an action filed by a shareholder to enforce a corporate cause of action where the corporation for some reasons has not sued to protect its own rights. While the Virginia Code does not set forth a specific statute of limitations to shareholders' derivative actions, the Court must determine which particular statute applies to the present case.

Milstead asserts that the five-year statute of limitations for injury to property applies. *See* Va. Code § 8.01-243(B). Defendants argue that the appropriate statute of limitations is governed by Virginia's "catch-all" provision which sets forth either a one or two-year statute of limitations depending on when the cause of action accrued. *See* Va. Code § 8.01-248.

Defendants claim that the Court's reliance on *Winston v. Gordon,* 115 Va. 899 (1914), is misplaced. In *Winston,* the court applied the "catch-all" statute of limitations to the cause of action against directors of a bank for neglect of duty as such directors. *See id.* at 915. While the court considered the action as

one arising out of a breach of duty, "[t]he wrong, if any, was to the *rights of property.*" *Id.* at 917 (emphasis added).

Section 2927 of the 1887 Code, the code section in effect in 1914, provided that: "Every personal action for which no limitation is otherwise prescribed shall be brought within *five years* next after the right to bring the same shall have accrued ... ." Va. Code § 2927 (1887) (emphasis added).[2] The *Winston* court applied this statute because the legislature had not enacted a statute setting forth a limitations period for an action based on injury to property. According to the Revisers' Note of Virginia Code § 8.01-243, "[s]ubsection B takes the 5-year limitation of the second sentence of former § 8-24 and applies it to all tort actions for injury to property."

The court in *Winston* concluded that a shareholder's claim for damages for financial loss resulting from negligent mismanagement by bank directors were considered as damages flowing from *injury to property interests.*

In *Anderson v. Bundy*, 161 Va. 1 (1933), the court relied on its holding in *Winston* and applied the five year statute of limitations. Like *Winston*, *Anderson* involved a suit brought by depositors to hold bank directors liable for their negligent administration of business affairs. "Bank directors, in their relation to the corporation, its creditors and depositors, occupy a fiduciary position." *Anderson*, 161 Va. at 18. The nature of the suits against the directors in each of these cases is identical to that of Milstead's derivative suit; a cause of action grows from a breach of duty and causes an *injury to property.*

> When one deposits money in a savings bank, *or takes stock in corporations,* thus divesting himself of the immediate control of his property, he expects, and has the right to expect, that the trustees or directors, who are chosen to take his place in the management and control of his property, will exercise ordinary care and prudence in the trusts committed to them ... .

*Anderson*, 161 Va. at 16-17 (emphasis added) (citations omitted). The court further articulated:

> It is clearly the law, at least in most jurisdictions, and certainly in Virginia, that *no direct action* lies to a creditor of a corporation

---

[2] Throughout the years, the Virginia Legislature has changed the "catch-all" limitations period from five years, to one year, and finally to two years. *See* Va. Code § 8.01-248 (1997); Va. Code § 8-24 (1950); Va. Code § 5818 (1919); Va. Code § 2927 (1887).

against its directors, who are its agents ... for improper performance or failure in performance of their duties. This is a right *belonging to the corporation only*, or its legal successors to the right. The creditors must sue, not for any direct right of action in them, but in the right of the corporation, after the corporation, or its proper representatives, have refused to act.

*Id.* at 21 (emphasis added) (citations omitted). Against these facts and reasoning, the Court's reliance on *Anderson* and *Winston* is appropriate.