Zachariou v Manios (2020 NY Slip Op 04811)





Zachariou v Manios


2020 NY Slip Op 04811


Decided on August 27, 2020


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on August 27, 2020

Renwick, J.P., Gische, Kapnick, Kern, Moulton, JJ.


11682 654501/18

[*1] Evangelia Manios Zachariou, Plaintiff-Appellant,
v
Vassilios Manios, Defendant-Respondent.


Hughes Hubbard & Reed LLP, New York (Derek J.T. Adler of counsel), for appellant.
Watson Farley & Williams, New York (John Kissane of counsel), for respondent.



Order, Supreme Court, New York County (Andrea Masley, J.), entered September 30, 2019, which granted defendant's motion to dismiss the complaint pursuant to CPLR 3211 for lack of standing, unanimously affirmed, without costs.
On March 13, 2002, plaintiff and defendant, who are siblings residing in Cyprus and Greece, respectively, executed three agreements in an effort to resolve a decades-long dispute over property that formerly belonged to their late brother, a Greek shipping magnate, who died in 1995. The agreements - the US Agreement, governed by New York law, and the London Agreement and the Letter of Instructions to Trustee (LOI), both governed by Greek law — divided the property between the siblings so that moving forward each asset would be owned solely by one of them as opposed to jointly owned in equal shares.
The US Agreement gave plaintiff the right to audit certain US companies that had held the family's U.S. real estate assets while they had been under defendant's exclusive control, and contemplated that plaintiff and defendant would share equally in distributions from these companies. In the event that the parties were unable to agree on the amount of the distributions, the US Agreement provided that an arbitration proceeding to resolve the dispute would be commenced in New York. The US Agreement further states that "[a]ny Party Distribution [FN1] determined to be due from either [defendant] or [plaintiff] shall be paid by that party to the Trustee to be distributed for the benefit of the other pursuant to the terms of the London Agreement." The London Agreement in turn states that "[a]ny monies found to be due to [defendant] or [plaintiff] pursuant to the US Agreement are to be paid . . . to the Trustee to be held in trust . . ." Pursuant to the London Agreement, Charalambos V. Sioufas, who had represented the family's businesses for many years, was appointed as "trustee for [defendant] and [plaintiff] in dealing with the transfers of the various assets under [that] Agreement."
Plaintiff and defendant were unable to agree on the amount of distributions owed. Thus, plaintiff commenced an arbitration proceeding against defendant and, in 2014, an arbitral tribunal found that defendant had received excess distributions in the amount of over $10.8 million. Despite the award having been confirmed by the U.S. District Court for the Southern District of New York (see Manios v Zachariou, 2015 WL 1455696, 2015 US Dist LEXIS 42537 [SD NY, March 31, 2015, No. 14CV4331-LTS-DCF]), defendant has not made any payments pursuant to the arbitration award to either plaintiff or Sioufas.
After commencing other actions in federal court and in Greece, plaintiff ultimately brought this action seeking specific performance for breach of contract, alleging that defendant breached the US Agreement by failing to pay the Party Distribution to Sioufas. The motion court dismissed the complaint for lack of standing, finding that pursuant to the London Agreement and [*2]the LOI, the Party Distributions are owed to the trust and it is up to the trustee to procure collection pursuant to the procedures agreed to by both parties. The motion court further found that plaintiff has standing to sue the trustee to enforce these procedures, but not defendant.
Contrary to defendant's contention, plaintiff is not estopped from arguing that Greek law controls the issue of standing. However, on the merits, plaintiff's argument is unavailing. Choice of law provisions typically apply to only substantive issues, not procedural ones (see e.g. Royal Park Invs. SA/NV v Morgan Stanley, 165 AD3d 460, 461 [1st Dept 2018], lv denied 32 NY3d 1143 [2019]). "The question of whether a plaintiff has standing is a procedural matter" (id. [internal quotation marks omitted]). "[M]atters of procedure are governed by the law of the forum state" (id. [internal quotation marks omitted]). Accordingly, the motion court properly applied New York law to determine whether plaintiff has standing.
Contrary to plaintiff's assertion, Zachariou v Manios (2007 NY Slip Op 31072[U] [Sup Ct, NY County 2007], affd 50 AD3d 257 [1st Dept 2008]) did not decide that she had standing.
Plaintiff contends that the complaint, nevertheless, should not have been dismissed for lack of standing because, pursuant to the governing documents, Sioufas' role was actually limited to that of an escrow agent and not a trustee, and thus, plaintiff is not precluded from bringing this action for breach of contract against defendant, a co-signatory to the US Agreement. However, there is no dispute that plaintiff refers to Sioufas as the trustee throughout the complaint, and that Sioufas is also referred to as the trustee in all the operative agreements.
Thus, the court properly dismissed the complaint because the beneficiary of a trust must show either that she asked the trustee to sue and that he refused or that it would have been futile for her to ask him to sue (see Velez v Feinstein, 87 AD2d 309, 315 [1st Dept 1982], lv dismissed in part and denied in part 57 NY2d 737 [1982], 57 NY2d 605 [1982]). Plaintiff does not even allege that she asked Sioufas to sue defendant and that Sioufas refused. Nor does the complaint allege that it would have been futile for her to ask him to sue. In addition, plaintiff does not argue on appeal that she sufficiently alleged demand futility.
Plaintiff contends that the London Agreement did not create a trust because Sioufas did not obtain legal title to the trust property and because the specific property at issue in this case (the Party Distribution) was not transferred to him; indeed, it did not exist at the time of the London Agreement. These arguments are unavailing (see Matter of Doman, 68 AD3d 862, 863 [2d Dept 2009] [rejecting "contention that the Trust was invalid because the property which was the subject of the Trust was not delivered into the Trust until six months after the Trust was created"]).
The parties in fact made numerous transfers to the trust for distribution of the transferred property amongst themselves, thereby creating a trust under paragraph (b) of the Restatement (Second) of Trusts § 17, which provides that "[a] trust may be created by . . . (b) a transfer inter vivos by the owner of property to another person as trustee for the transferor or for a third person, . . . ."
The London Agreement also provided that the parties would each provide the trustee "upon execution of this Agreement the sum of US $700,000, to enable him to deal with the claimants and settle their claim by way of compromise," and shares of stock were transferred to the trustee to be held by him until the termination of the audit provided for in the US Agreement. This activity further creates a trust under paragraph (e) of the § 17 of the Restatement (Second) of Trusts which provides that a trust may be created by "(e) a promise by one person to another person whose rights thereunder are to be held in trust for a third person."
We have considered plaintiff's remaining arguments and find them unavailing.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: AUGUST 27, 2020
CLERK



Footnotes

Footnote 1:A Party Distribution occurs if one party receives disproportionate distributions from the US companies.